IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OTRA, LLC,

                Plaintiff,

      v.

AMERICAN SAFETY INDEMNITY
COMPANY,

                Defendant.

Case No. 3:20-cv-01063-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

        This case arises out of an insurance coverage dispute between American Safety

Indemnity Company ("ASIC") and its insured, OTRA, LLC ("OTRA"). The parties have moved

for summary judgment on the question of whether ASIC had a duty to defend OTRA in *R.S. v.*

*Shanghai Joe, Inc., dba The Safari Showclub, et al.*, Case No. 18-cv-28333 (Multnomah Cty.

Cir. Ct.) (the "Underlying Lawsuit"). The Court has jurisdiction over this matter under 28 U.S.C.

§ 1332, and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to

28 U.S.C. § 636(c). For the reasons that follow, the Court grants OTRA's motion for partial

summary judgment and denies ASIC's motion for summary judgment.

# BACKGROUND[1]

## I.    THE INSURANCE POLICY

ASIC issued a commercial general liability policy (the "Policy") to OTRA, which covered the period between September 24, 2008 and September 24, 2009. (Decl. of Jennifer Crow in Supp. of Def.'s Mot. Summ. J. ("Crow Decl.") ¶ 2; Crow Decl. Ex. B, at 2-141.)[2] The Policy provides for, among other things, "Bodily Injury and Property Damage Liability" in Coverage A and "Personal Advertising Injury Liability" in Coverage B. (Crow Decl. Ex. B, at 78, 82) (bold and all caps omitted). The Policy also includes a "Liquor Liability Coverage Form" and several endorsements providing additional coverage, including an endorsement entitled "Limited Assault or Battery Insurance" ("A&B coverage"). (Crow Decl. Ex. B, at 99, 135) (bold and all caps omitted).

### A.    Coverage A

Coverage A provides coverage for "bodily injury" that was caused by an "occurrence," took place in the "coverage territory," and occurred "during the policy period," assuming the insured and its authorized employees did not know that the bodily injury "had occurred, in whole or in part," before "the policy period." (Crow Decl. Ex. B, at 78.) The Policy defines "[b]odily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting

---

[1] "An insurer's duty to defend, according to the widely accepted 'four-corners' rule, is determined by comparing the complaint to the insurance policy." *W. Hills Dev. Co. v. Chartis Claims, Inc.*, 385 P.3d 1053, 1055 (Or. 2016) (quoting *Restatement of Liability Insurance* § 13, comment a). Thus, the Background that follows focuses primarily on the insurance policy that ASIC issued to OTRA and the operative complaint from the Underlying Lawsuit, which the parties agree is the Fourth Amended Complaint ("FAC"). (*See* Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. ("Def.'s Resp.") at 3, stating that "[t]he parties agree that the FAC governs this analysis").

[2] The Court's record citations refer to the page numbers assigned by the electronic filing system.

from any these at any time." (Crow Decl. Ex. B, at 89.) The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and states that the "[c]overage territory" includes the United States. (Crow Decl. Ex. B, at 89, 91.)

Coverage A is subject to several exclusions. For example, Coverage A excludes coverage for bodily injury that was (1) "expected or intended from the standpoint of the insured," or (2) due to the "furnishing of alcoholic beverages to a person under the legal drinking age[.]" (Crow Decl. Ex. B, at 79.)

**B.**     **Coverage B**

Coverage B provides coverage for "personal and advertising jury" that was "caused by an offense arising out of [the insured's] business but only if the offense was committed in the 'coverage territory' during the policy period." (Crow Decl. Ex. B, at 82-83.) The Policy defines "[p]ersonal and advertising injury" as an injury, including any consequential "bodily injury," that arises out of several specified offenses, including "[f]alse arrest, detention or imprisonment," and "publication, in any manner, of material that violates a person's right of privacy." (Crow Decl. Ex. B, at 91.)

**C.**     **Liquor Liability Coverage Form**

The Liquor Liability Coverage Form provides coverage for an "injury" that was caused by the "selling, serving or furnishing of any alcoholic beverage," and occurred "during the policy period in the 'coverage territory.'" (Crow Decl. Ex. B, at 135.) The Liquor Liability Coverage Form defines an "injury" as "all damages, including damages because of 'bodily injury' and 'property damage,' and including damages for care, loss of services or loss of support." (Crow Decl. Ex. B, at 139.) The Liquor Liability Coverage Form excludes coverage for, among other

things, an "injury" that was "expected or intended from the standpoint of the insured[.]" (Crow Decl. Ex. B, at 135.)

**D.    A&B Coverage**

The A&B coverage provides coverage for "'bodily injury' and 'personal or advertising injury' arising out of an 'assault or battery' by any insured, whether provoked or unprovoked by any person, or out of any act or omission in connection with," among other things, the "[n]egligent hiring, supervision, retention or training of any 'employee[.]'" (Crow Decl. Ex. B, at 99.) The A&B coverage defines an "[a]ssault or battery" as "harmful or offensive contact between or among two or more persons including, but not limited to, apprehension of harmful or offensive contact or threats of harmful or offensive contact." (Crow Decl. Ex. B, at 100.) The A&B coverage excludes coverage for "sexual assault, abuse or molestation" and "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Crow Decl. Ex. B, at 100.) The A&B coverage also provides that the "bodily injury" or "personal and advertising injury" must be caused by an "occurrence" that "takes place in the 'coverage territory' . . . [and] during the policy period." (Crow Decl. Ex. B, at 99.)

**E.    Other Relevant Exclusions**

The Policy includes exclusions for "Abuse, Molestation, [and] Sexual Assault" (the "AMS exclusion") and "Injury to Performers." (Crow Decl. Ex. B, at 124, 131) (bold and all caps omitted).

**1.    The AMS Exclusion**

The AMS exclusion excludes coverage for "any loss, claim, 'suit', cost, expense, or liability for damages," that are "directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related, to any extent, to the actual or threatened abuse,

molestation, exploitation, sexual assault, sexual attack, or rape of any person." (Crow Decl. Ex. B, at 131.) The AMS exclusion also excludes coverage for damages that are:

> directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related, to any extent, to the employment, hiring, contracting of, investigation of, reporting of, supervision, training or retention of persons who are involved in any manner with the actual or threatened abuse, molestation, exploitation, sexual assault, sexual attack or rape of any person.

(Crow Decl. Ex. B, at 131.)

### 2.    Injury to Performers

The Injury to Performers exclusion, which "applies whether or not the entertainer, talent or performer [in question is] compensated in any manner," excludes coverage for damages that are:

> directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related to damage, injury or loss sustained by persons or organizations who are entertainers, talent or performers of any nature and their associated entourage, including but not limited to damage, injury or loss sustained during preparation, rehearsal, performance or breakdown activities.

(Crow Decl. Ex. B, at 124.) The Injury to Performers exclusion defines "[e]ntourage" as "the staff, associated personnel, security, family, guests and other individuals whose presence is at the invitation of, or travel with the knowledge of the entertainer, talent or performer." (Crow Decl. Ex. B, at 124.)

## II.    THE UNDERLYING LAWSUIT

The plaintiff in the Underlying Lawsuit ("R.S.") filed the FAC on April 26, 2019, naming OTRA and others as defendants. (Crow Decl. ¶ 8; Crow Decl. Ex. A, at 2-3.) R.S. alleged that OTRA did business as, and owned, "The Safari Showclub" strip club, R.S. was "trafficked through" The Safari Showclub during Steven Toth's ("Toth") tenure as the manager, OTRA transferred ownership of The Safari Showclub to Shanghai Joe, Inc. "shortly after R.S. was

trafficked through The Safari Showclub," and Toth "later pled guilty to charges involving child

sex trafficking at another . . . OTRA-related company." (Crow Decl. Ex. A, at 3-4.)

R.S. alleged in the FAC that when she was fifteen and sixteen years old, sex traffickers

"preyed upon . . . [and] 'groomed' her and worked her at strip clubs owned and operated by

the . . . [d]efendants." (Crow Decl. Ex. A, at 6.) R.S.'s trafficker took her to The Safari Showclub

when she was fifteen, using an identification card with "the name, date of birth, physical

description and photograph on it of an adult woman who was not R.S., and did not resemble

R.S." (Crow Decl. Ex. A, at 7.) The trafficker "coerced" R.S. "into presenting the identification

card to managers and employees . . . for purposes of gaining access to the club." (Crow Decl. Ex.

A, at 7.)

The Safari Showclub "accepted the identification card as proof that R.S. was an adult,

without scrutinizing the card or questioning R.S." (Crow Decl. Ex. A, at 7.) The Safari Showclub

also "offer[ed] [R.S.] to customers as live nude entertainment, for nude dancing and 'lap

dancing,' and for sham companionship for the entertainment of adult customers and the financial

benefits and profit of the club." (Crow Decl. Ex. A, at 7.) R.S. later "told The Safari Showclub,

its employees, and independent contractors working under the direction and supervision of The

Safari Showclub, that she was only [fifteen] years old." (Crow Decl. Ex. A, at 7.) Despite this

warning, "The Safari Showclub, its employees, and independent contractors working under the

club's direction and supervision" continued to "intentionally, recklessly, or negligently" coerce

R.S. into "dancing naked in front of the customers," who "would ogle her, say inappropriate and

offensive things to her, utter obscenities at her, throw money at her, stuff money into her

undergarments, and touch her in both sexual and non-sexual ways that made her uncomfortable

and caused anxiety and emotional distress that is ongoing." (Crow Decl. Ex. A, at 7-8.)

In addition to the conduct described above, "The Safari Showclub, its employees, independent contractors working under the direction and supervision of The Safari Showclub, or customers of The Safari Showclub," also "intentionally, recklessly, or negligently" coerced R.S. "into drinking alcoholic beverages," which "result[ed] in bodily injury to R.S., including headache, depression, dizziness, disorientation, loss of inhibition, nausea, anxiety, emotional distress and alcohol dependency, some or all of which are ongoing." (Crow Decl. Ex. A, at 9-10.) Additionally, "The Safari Showclub, its employees, and independent contractors under the direction and supervision of The Safari Showclub" coerced R.S. into performing for "customers in ways other than nude dancing," such as "mock flirting, socializing, engaging in inappropriate and offensive sexual banter and innuendo[.]" (Crow Decl. Ex. A, at 9-10.)

The FAC included several other troubling allegations against The Safari Showclub. For example, R.S. alleged that:

- "The Safari Showclub, its employees, independent contractors working under the direction and supervision of The Safari Showclub, and customers" "intentionally, recklessly, or negligently" coerced R.S. "into ingesting drugs and other substances, including cocaine and marijuana."

- "The Safari Showclub, its employees, independent contractors working under the direction and supervision of The Safari Showclub, and customers" "intentionally, recklessly, or negligently" exposed R.S. to "nudity, depictions of nudity, obscenity, displays or depictions of sexual conduct or simulated sexual conduct, and transactions involving the exchange of money for the performance of acts involving nudity, sexual conduct, and simulated sexual conduct."

- The Safari Showclub and its employees "intentionally, recklessly, or negligently" coerced R.S. into using "her body and behaving in ways to persuade . . . customers to spend more money," and giving the money she received to The Safari Showclub and its employees.

- "The Safari Showclub and its employees coerced R.S. into going to another location to be photographed in provocative and sexually suggestive poses for publication in Exotic Magazine as advertising for live nude dancing at The Safari Showclub."

- "The Safari Showclub, its employees, and independent contractors working under the direction and supervision of The Safari Showclub, knew, or had reason to know based upon experience, that pimps, prostitutes, and persons involved in sex trafficking frequently attempt to and do enter onto and remain on the premises of strip clubs, including The Safari Showclub, for purposes of accessing the clubs and their customers for their own benefit and personal profit."

- "The Safari Showclub knew that its employees, independent contractors . . . , and customers . . . frequently possessed drugs, ingested drugs, shared drugs, and coerced others into ingesting drugs, including cocaine, marijuana, and prescription narcotics, on The Safari Showclub's licensed premises[.]"

- "[T]he place or character of The Safari Showclub's business, or its past experience, is such that The Safari Showclub reasonably anticipated careless or criminal conduct on the part of its employees, independent

> contractors . . . , and its customers and other third person using or upon its
>
> premises."

(Crow Decl. Ex. A, at 13-15, 18.)

R.S. also alleged in the FAC that The Safari Showclub was negligent in several respects. For example, R.S. alleged that The Safari Showclub "breached its duties" by: (1) "failing to scrutinize or verify the forms of identification presented by persons who appear under the age of [twenty-six] years old, including R.S., who attempt to gain entry to The Safari Showclub," (2) "accepting as proof of age . . . a form of identification that was not issued to R.S., obviously did not identify R.S., did not have R.S.'s photograph, name, date of birth or physical description on it, and included a photograph of an adult woman who was not R.S.," (3) "failing to adopt and implement reasonable procedures for verifying the age and identity of persons attempting to gain entry to The Safari Showclub premises, and who appear to be under the age of [twenty-six] years old, including R.S.," (4) "failing to employ identification verification machines or other technology to verify forms of identification offered by persons, including R.S., attempting to enter The Safari Showclub premises," and (5) "failing to properly train . . . [its] employees and managers to properly verify the age and identity of every person appearing to be under the age of [twenty-six], including R.S., who attempts to enter The Safari Showclub premises." (Crow Decl. Ex. A, at 19-20.)

R.S. also alleged that The Safari Showclub breached its duties by failing to: (1) "adopt and implement reasonable procedures to discover the presence of minors and persons under the age of [eighteen] years old, including R.S., and promptly remove them from [the] club," (2) "properly supervise [its] employees and managers to prevent the entry of minors . . . and victims of child sex trafficking, including R.S.," (3) "train its employees and managers to recognize and

report signs of child sex trafficking," (4) "prevent customers and other third persons from ogling R.S. . . . or touching her in sexual or non-sexual ways," (5) "prevent employees, independent contractors . . . , and customers and others third persons, from supplying R.S. with alcohol or drugs," and (6) "discover and intervene in illegal or unsafe conduct occurring on [the club's] premises, including with regard to R.S." (Crow Decl. Ex. A, at 19-20, 23.)

Based on these events, R.S. asserted claims against OTRA (doing business as The Safari Showclub) for negligence, negligence *per se*, joint and vicarious liability (based on the acts of the club's employees, agents, and contractors), and violation of OR. REV. STAT. § 30.867. (Crow Decl. Ex. A, at 6, 9, 13, 24, 26.)

## III.    PROCEDURAL HISTORY

OTRA tendered claims for defense and indemnity of the Underlying Lawsuit to ASIC and two other liability insurance companies, Capitol Specialty Insurance Corporation ("Capitol") and Nationwide E&S Specialty ("Scottsdale"). (Crow Decl. ¶¶ 6, 8, 10, 13.) Scottsdale agreed to defend OTRA in December 2018, and ASIC denied its duty to defend or indemnify in correspondence dated October 8, 2019. (Crow Decl. ¶¶ 12, 14.) Capitol also denied that it had a duty to defend, which prompted OTRA to sue Capitol in state court. (Crow Decl. ¶ 15.)

After the state court found that Capitol had a duty to defend OTRA, "Capitol joined Scottsdale in contributing to [OTRA]'s defense in the Underlying Lawsuit." (Crow Decl. ¶¶ 18, 20.) In late December 2019, R.S. settled with the defendants she named in the Underlying Lawsuit and agreed to dismiss the Underlying Lawsuit with prejudice and without costs or fees. (Decl. of Nicholas Thede in Supp. of Pl.'s Mot. Partial Summ. J. ("Thede Decl.") ¶ 3; Thede Decl. Ex. 2, at 1-3.)

In mid-January 2020, after the Underlying Lawsuit was settled and dismissed, Capitol and Scottsdale assigned OTRA their rights to seek contribution from ASIC for the fees and costs

incurred in defending the Underlying Lawsuit. (Thede Decl. ¶ 11; Thede Decl. Ex. 10, at 1-6.)
OTRA filed this action against ASIC on July 1, 2020, and the parties' cross-motions for
summary judgment followed.

## ANALYSIS

### I.    LEGAL STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion
for summary judgment, the court must view the facts in the light most favorable to the non-
moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of
Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses,
weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986). "Where the record as a whole could not lead a rational trier of fact to
find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv.
Co.*, 391 U.S. 253, 289 (1968)).

### II.    DISCUSSION

The parties' motions present the question of whether ASIC had a duty to defend OTRA
in the Underlying Lawsuit. As explained below, OTRA has met its initial burden of proving
coverage, and ASIC has failed to meet its burden of proving an exclusion from coverage. *See
generally Griggs v. Allstate Ins. Co.*, No. 3:12-cv-00463-MO, 2013 WL 840175, at *2 (D. Or.
Mar. 6, 2013) ("[T]he initial burden of proving coverage is on the insured. At that point, the
burden shifts, and the insurer must prove that an exclusion applies." (citing *Emp'rs Ins. of
Wausau v. Tektronix, Inc.*, 156 P.3d 105, 119 (Or. Ct. App. 2007)))). The Court therefore grants

OTRA's motion for partial summary judgment and denies ASIC's motion for summary judgment.

### A.    Applicable Law[3]

Oregon courts "examine[] two documents to determine whether an insurer has a duty to defend an action against its insured: the insurance policy and the complaint in the action against the insured." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 293 P.3d 1036, 1039 (Or. 2012). "The insurer has a duty to defend if the complaint provides *any* basis for which the insurer provides coverage." *Ledford v. Gutoski*, 877 P.2d 80, 83 (Or. 1994) (citing *Nielsen v. St. Paul Co.*, 583 P.2d 545, 547 (Or. 1978)). Thus, "even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, *could* impose liability for conduct covered by the policy." *Id.* (emphasis added) (citing *Ferguson v. Birmingham Fire Ins.*, 460 P.2d 342, 347 (Or. 1969)).

If the insured meets its initial burden of proving that "the allegations in the complaint trigger the insurer's duty to defend," then the insurer must demonstrate that "one or more exclusions in the insurance policy absolve it of that duty." *Bighorn Logging Corp. v. Truck Ins. Exch.*, 437 P.3d 287, 293 (Or. Ct. App. 2019) (citing *FountainCourt Homeowners' Ass'n v. FountainCourt Dev., LLC*, 380 P.3d 916, 927 (Or. 2016)). Under Oregon law, "any ambiguity in an exclusionary clause is strictly construed against the insurer." *Stanford v. Am. Guar. Life Ins. Co.*, 571 P.2d 909, 911 (Or. 1977) (citing *United Pac. Ins. v. Truck Ins. Exch.*, 541 P.2d 448, 454 (1975)); *see also Ledford*, 877 P.2d at 83 (explaining that "[a]ny ambiguity in the complaint with

---

[3] "In a diversity action like this one, the substantive law of the forum state applies[.]" *Travelers Prop. Cas. Co. of Am. v. Liberty Surplus Ins. Corp.*, 806 F. App'x 526, 528 (9th Cir. 2020) (citing *Conestoga Servs. Corp. v. Exec. Risk Indem., Inc.*, 312 F.3d 976, 980-81 (9th Cir. 2002)).

respect to whether the allegations could be covered is [likewise] resolved in favor of the insured").

## B.      Evidentiary Objections

Before addressing the merits of the parties' motions, the Court must address the three evidentiary objections ASIC raised in its response to OTRA's motion. Specifically, ASIC objects to: (1) page four of OTRA's motion because it "mischaracterizes" whether the FAC alleges that OTRA "knowingly or intentionally" violated an Oregon statute; (2) OTRA's reliance on pleadings from, and OTRA's representations regarding, a different insurance coverage dispute relating to the Underlying Lawsuit, because it is "irrelevant in this case"; and (3) OTRA's "attempts to insert the word 'negligence' into multiple paragraphs in R.S.'s [FAC] where such word is absent," because R.S.'s allegations "govern, not [OTRA's] recitation of those allegations with insertions of additional language." (Def.'s Resp. at 1-4.)

The Court overrules ASIC's evidentiary objections. As an initial matter, ASIC failed to confer with OTRA (*see* Def.'s Resp. at 1, failing to include a conferral certification), as required by the Local Rules. *See* LR 56-1(b) ("Evidentiary objections in a [summary judgment] response or reply memorandum are subject to the certification requirement of LR 7-1(a)."). The Court also overrules ASIC's relevance objection because it is duplicative of the summary judgment standard itself. *See Doutherd v. Montesdeoca*, No. 2:17-cv-02225, 2020 WL 6043952, at *4 (E.D. Cal. Oct. 13, 2020) (overruling relevance objections and explaining that relevance objections are necessarily duplicative of the summary judgment standard, because the court may not rely on any irrelevant facts). Finally, the Court overrules ASIC's objections to OTRA's characterization of the FAC and R.S.'s allegations because they amount to legal arguments, not evidentiary objections. *See Cordelia Lighting, Inc. v. Zhejiang Yankon Grp. Co.*, No. 14-881,

2015 WL 12656241, at *2 (C.D. Cal. Apr. 27, 2015) (declining to address a moving party's

remaining "objections" because they amounted to "legal arguments, not evidentiary objections").

### C.    Merits

OTRA argues that it has met its burden of proving coverage because R.S.'s allegations

trigger coverage under Coverage A, Coverage B, the Liquor Liability Coverage Form, and the

A&B coverage. (Pl.'s Mot. for Partial Summ. J. at 20.) ASIC does not dispute that R.S.'s

allegations trigger coverage under the A&B coverage, and thus that OTRA has met its initial

burden of proving coverage. (See Def.'s Resp. at 14-16.) ASIC, however, argues that the A&B

coverage's exclusions for expected or intended injury and sexual assault, abuse, or molestation

preclude coverage under the A&B coverage.[4] (Def.'s Resp. at 14-16; Def.'s Mot. Summ. J. at 20-

23.)

### 1.    The A&B Coverage

The A&B coverage provides coverage for "'bodily injury' and 'personal or advertising

injury' arising out of an 'assault or battery' by any insured, whether provoked or unprovoked by

any person, or out of any act or omission in connection with [the] . . . [n]egligent hiring,

supervision, retention or training of any 'employee[.]'" (Crow Decl. Ex. B, at 99.) The A&B

coverage defines an "[a]ssault or battery" as "harmful or offensive contact between or among

two or more persons including, but not limited to, apprehension of harmful or offensive contact

---

[4] In its denial letter dated October 8, 2019, ASIC acknowledged that the AMS exclusion
applies only to Coverage A, Coverage B, and the Liquor Liability Coverage Form, not the A&B
coverage. (See Thede Decl. Ex. 5, at 17-18, ASIC claimed that the AMS exclusion precluded
coverage under Coverage A, Coverage B, and the Liquor Liability Coverage Form, and that the
A&B coverage's exclusion for "sexual assault, abuse or molestation" precluded coverage under
that part). Unlike the AMS exclusion, the A&B coverage's exclusion for "sexual assault, abuse
or molestation" does not include broad language barring any "suit" for damages that is "in any
way related to, to any extent," to the "exploitation" of any person. (See Crow Decl. Ex. B, at 99-
100, 131.)

or threats of harmful or offensive contact." (Crow Decl. Ex. B, at 100.) The A&B coverage

excludes coverage for (1) "'[b]odily injury' or 'property damage' expected or intended from the

standpoint of the insured," and (2) "sexual assault, abuse or molestation." (Crow Decl. Ex. B, at

100.)

### a.  Expected or Intended Injury

ASIC argues that the A&B coverage's exclusion for expected or intended injury "applies

here to preclude a duty to defend[.]" (*See* Def.'s Resp. at 14, stating as much and incorporating

arguments from pages seven though nine by reference). Citing the Oregon Court of Appeals'

opinion in *Mutual of Enumclaw v. Merrill*, 794 P.2d 818, 820 (Or. Ct. App. 1990), ASIC argues

that the Court "should infer intent based on the harm alleged" and that OTRA "cannot claim that

it did not expect R.S. to be harmed when R.S.'s allegations make clear that it either knew or was

willfully ignorant to her status as minor, when it allegedly coerced her to perform for adult men."

(Def.'s Resp. at 7-8.)

*Merrill* is distinguishable. *Merrill* was a declaratory judgment action that an insurer filed

against its insured ("Merrill") and his minor granddaughter. 794 P.2d at 819. The insurer argued

that it had "no duty to defend or indemnify Merrill in [his granddaughter's] underlying action

against him, in which she allege[d] that he sexually molested her and thereby caused physical

and emotional injuries." *Id.* In so arguing, the insurer relied on a policy exclusion for "'bodily

injury . . . which is either expected or intended from the standpoint of the insured.'" *Id.* The

Oregon Court of Appeals held that the insurer had no duty to defend or indemnify, explaining

that it "d[id] not matter" whether Merrill "subjectively intend[ed] the specific injuries" that his

granddaughter sustained, or "any injuries," because "an injurious intent is necessarily inferred

from this type of intentional misconduct." *Id.* at 820.

PAGE 15 – OPINION AND ORDER

Unlike in *Merrill*, here R.S. did not allege only intentional misconduct. On the contrary, R.S. alleged, among other things, that OTRA negligently failed to discover that she was a minor and failed to discover that others on its premises were engaging in illegal conduct. *Cf. Merrill, 794 P.2d at 820* (finding that the insurer did not have a duty to defend or indemnify based on an exclusion for injury that is expected or intended from the insured's standpoint, and noting that neither party challenged trial court's "finding that Merrill's acts of molestation were intentional"). Thus, unlike in *Merrill*, the FAC here includes allegations of negligent conduct from which the Court cannot infer an injurious intent as a matter of law.

Furthermore, the Oregon Supreme Court has explained that a "court should only infer that the insured had a subjective intent to cause harm or injury as a matter of law when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct." *Allstate Ins. Co. v. Stone*, 876 P.2d 313, 315 (Or. 1994) (citing *Nielsen*, 583 P.2d at 547-48). Here, the Court cannot conclude that the only reasonable inference to draw from the FAC's allegations is that OTRA had a subjective intent to cause harm to R.S. Rather, there are a number of reasonable inferences the Court could draw from OTRA's alleged conduct given the FAC's liberal use of the disjunctive "or" in describing who engaged in the challenged conduct and whether such conduct was done intentionally, recklessly, or negligently.

For these reasons, ASIC has failed to demonstrate that the A&B coverage's exclusion for expected or intended injury applies here.

**b.      Sexual Assault, Abuse, or Molestation**

ASIC also argues that the A&B coverage's exclusion for "sexual assault, abuse, or molestation applies to preclude coverage." (Def.'s Resp. at 15.) As explained below, the Court disagrees.

The A&B coverage excludes coverage for "sexual assault, abuse or molestation." (Crow Decl. Ex. B, at 100.) According to ASIC, "an 'assault or battery' will only be covered [under the A&B coverage] when it is not of a sexual nature." (Def.'s Mot. Summ. J. at 21; *see also* Pl.'s Resp. at 18, noting that ASIC "concede[d] in its motion" that an assault or battery will be covered under the A&B coverage "'when it is not of a sexual nature'"). ASIC argues that the A&B coverage's exclusion for sexual assault, abuse, or molestation applies here because "[t]he harmful or offensive conduct that is alleged to have befallen R.S. is clearly of a sexual nature" and "there are no allegations that R.S. was touched in any non-sexual manner by the adult patrons, employees, and other third-parties present at [OTRA's] strip club." (Def.'s Mot. Summ. J. at 21-22.)

Contrary to ASIC's argument, the FAC included allegations that R.S. was subjected to non-sexual contact at The Safari Showclub. For example, R.S. alleged that OTRA breached its duties by, among other things, failing to (1) prevent "customers and other third persons from . . . touching [R.S.] in sexual or non-sexual ways," and (2) protect R.S. from customers who "touch[ed] her in sexual or non-sexual ways." (Crow Decl. Ex. A, at 15.)

ASIC asserted at oral argument that any alleged non-sexual harmful or offensive contact here would necessarily fall under the "abuse" exclusion, but the Court agrees with OTRA that the term "sexual" preceding the series "assault, abuse or molestation" modifies all of the words that follow, and therefore allegations of non-sexual "abuse" are not excluded from coverage. *See generally Lindenberg v. Jackson Nat'l Life Ins. Co.*, No. 2:13-cv-02657, 2014 WL 11332306, at *7 (W.D. Tenn. Dec. 9, 2014) ("The series-qualifier canon states that 'a modifier at the beginning or end of a series of terms modifies all the terms.' The series-qualifier canon applies 'where the modifying clause undeniably applies to at least one [term] and makes sense with

all.'") (citations and ellipses omitted). Indeed, to interpret "abuse" without the modifier, as ASIC suggests, would exclude from assault and battery coverage any allegations of physical abuse, which would effectively eliminate the assault and battery coverage altogether. *See ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 194 P.3d 167, 178 (Or. App. 2008) ("Under Oregon law, the purpose of an exclusion in an insurance policy is to eliminate coverage that, were it not for the exclusion, would otherwise exist.") (citation omitted). At best, the term "abuse" as used in the exclusion is ambiguous, and therefore must be construed against ASIC. *See N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 742 (Or. 2001) (holding that "'any reasonable doubt as to the intended meaning'" of a term in an insurance policy "'will be resolved against the insurance company and in favor of extending coverage to the insured'") (citations omitted).

In summary, although R.S. alleges some conduct that is outside the Policy's coverage, she also alleges conduct that could subject OTRA to liability for covered conduct. Specifically, R.S. alleges in the FAC that OTRA failed to discover that customers and unnamed third parties touched R.S. in non-sexual ways on the club's premises and failed to prevent them from doing so. Thus, the FAC includes allegations of harmful or offensive contact that is covered by the A&B coverage and not subject to the "expected or intended injury" or "sexual assault, abuse or molestation" exclusions. Accordingly, the Court concludes that OTRA has met its burden of proving coverage under the A&B coverage and ASIC has failed to meet its burden of proving an exclusion from coverage, and therefore ASIC had a duty to defend OTRA in the Underlying Lawsuit.[5] *See Ledford*, 877 P.2d at 83 ("[E]ven if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the

_____

[5] In light of the Court's holding, it need not reach the issue of whether ASIC also had a duty to defend under Coverage A, Coverage B, or the Liquor Liability Coverage Form.

complaint, without amendment, *could* impose liability for conduct covered by the policy.")
(emphasis added) (citation omitted).

## CONCLUSION

For the reasons stated, the Court DENIES ASIC's motion for summary judgment (ECF
No. 12) and GRANTS OTRA's motion for partial summary judgment (ECF No. 15).

**IT IS SO ORDERED.**

DATED this 20th day of November, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge